Van Vorst, J.
This is an action brought by the plaintiff as a taxpayer in the city of New York, under chapter 531 of the Laws of 1881, in which it is asked that certain steps and proceedings of the commissioners of the sinking fund towards selling and leasing certain ferry franchises, with adjacent bulkhead and wharf privileges, should be adjudged *545 illegal and void, and that the execution of a lease for such franchises and rights by the municipal officers should be enjoined; other and kindred relief is also demanded.
On the 17th day of July, 1884, the two ferry franchises established by the common council of the city of New York, one extending from the bulkhead at the foot of WhitehaE street, in the city of New York, to Staten Island, and the other from the foot of the same street to Bay Ridge, Long Island, were sold together, with a lease of the bulkhead, at the foot of WhitehaE street, and pier No. 1 East River, to the defendant the Staten Island Rapid Transit Company, at public auction. The railroad company having bid $10,000 per annum for the use of the wharf property, and fourteen and one-quarter per cent of the gross receipts of the two ferries, for a period of eight years and nine months, was declared to be the highest bidder and entitled to a lease.
The commissioners of the sinking fund, in publicly offering the property in question for sale and lease, stated in their advertisement and notice that the franchises of operating the two ferries would be offered for sale together for the term above mentioned, together with the right to occupy and use the wharf property then occupied and used for ferry purposes at the foot of WhitehaE street. And further, that the said franchises would be offered at an upset price of five per cent of the gross receipts from ferriage of each of said ferries, and a yearly fixed rental of $10,000 for the wharf property, to be paid in addition to the percentage of gross receipts from ferriage, and that the franchises and use of wharf property would be sold to the person who would offer to pay the highest percentage on the gross receipts of said ferries, not less than the aforesaid percentage, and the fixed rental for the wharf property.
It is urged on behalf of the plaintiff that the terms and conditions of the sale are in conflict with the provisions of the consolidation act of 1882, chapter 410,
Section 170 of the act provides that the commissioners of the sinking fund shall have power to seE or lease, for the highest marketable price or rental, at public auction, after public advertisement and appraisal, any city property, except wharves or piers, but not for a term longer than ten years.
The ferry franchises and wharf rights are city property. The subject of wharves and piers, their control and disposition, distinguished from ferry franchises, vests, under the act of consolidation, with the department of docks, subject, however, to the special power and duty with respect to them, vested in the commissioners of the sinking fund, mentioned in section 711 of the consoEdation act.
*546 By section 180 of the act under consideration the commissioners of the sinking fund possess the power, and they are authorized to lease, in the manner provided by law, along with the franchise of a ferry, such wharf property, including wharves, piers, bulkheads, slips and docks used or required for the purposes of such ferry.
It is urged on the plaintiff’s behalf that the selling of the two ferry franchises together, and the fixing by the commissioners of an “upset” price, founded upon the gross receipts of the ferries, and the yearly rental of the wharf property to be paid in addition to the percentage of gross receipts, not less than five per cent thereof, and the determination who should be the highest bidder at an auction sale, upon any such basis, is illegal and wasteful. I -regard this as the principal question in this case.
The statutory provisions allowing the commissioners of the sinking fund to sell wharf property necessary to the operation of a ferry franchise, in conjunction with the lease or sale of the franchise, doubtless arose from the necessity of the case. It was such necessity that took from the clock department, charged with the general subject, the control of this special property, adjoining and in substance set apart to ferry purposes.
A ferry franchise, without the use of a wharf, as a place of departure and landing, would be useless and of no value. Hence the commissioners of the sinking fund are authorized to sell them together. If sold separately one person might purchase the franchises, expecting to buy also the use of a wharf, and might fail to secure it through the intrusion and interference of another buyer.
The whole subject was, doubtless, carefully considered by the commissioners of the sinking fund, in valuing and appraising the property preparatory to a sale, and in adjusting the terms of the sale.
The wharf had certainly a value of its own if it could have been used for commercial purposes disconnected from a ferry franchise. But, in substance, where ferries have been established by the proper legal authority, the adjacent bulkhead or wharf in the city is set apart to its use, and, as a statutory regulation, must be sold with the franchise.
And in a true sense and as a practical matter the right of a ferry-boat to receive its passengers from, and to land them upon a wharf, at a designated point, fixed when the ferry is established, should be regarded as a part of the franchise itself and inseparable from it. ■
Under all the facts and circumstances of this case I fail to discover either illegality, waste or disregard of the interests of the taxpayers of the city of New York in the action of the commissioners of the sinking fund, or in the result *547 reached by them through the conditions and terms of sale adopted.
It was considered by the commissioners that the two franchises should be sold together, as they had a common point of departure from, and landing at, the city.
Under such circumstances it was considered that both franchises should be owned and operated by the same person or interest. This was a matter upon which the judgment of the commissioners was exercised; it was not illegal, nor was it capricious. I see no reason to interfere with the result they reached in this regard.
The owning of these ferries by the same person would allow them to be operated without conflict or confusion at the place of departure, which might arise if they were in separate or rival hands.
I am of the opinion that the form in which bids were invited were well adapted to get the highest price for the franchises.
The evidence shows that the proceeds from these ferries, since the sale of the franchises, have been so large as to constitute the bid of the railroad company considerably in excess of the plaintiff’s bid at the same sale. It is, however, suggested that a bid based upon a fixed percentage of gross receipts is uncertain and illegal. The amount of rents from city ferries must needs fluctuate, but experience shows that they steadily increase. Be that as it may, however, I know of no better way of testing and determining the value of a ferry franchise than by considering the amount of its receipts from passengers and freight.
A sale of franchises yielding such proceeds, based upon a percentage thereof, must be fair.
There can be, therefore, nothing improper in fixing the amount of rent at a certain percentage of the gross receipts of the business prosecuted under it. I have no doubt but that a sale or lease of the property for a specific sum per annum for the franchises, and the accompanying wharf rights would be legal, nor is what was done less so. For when such property is offered for sale, upon the terms above described, the person offering to pay as a rental the highest percentage of the gross receipts of the franchises, would not only be entitled to a lease of the franchises under the conditions of sale, but would be, in a true sense, the highest bidder for the entire property interest sold.
And there is no reason to question the proposition that as the adjacent wharf, essential to the working of a ferry, is sold with it, in pursuance of the directions of the statute, the highest percentage of the gross receipts of these ferries should be regarded as representing the value of the fra.m *548 chises, with the value of the use of the wharf in connection with them.
The commissioners of the sinking fund were, however, careful to add that, for the purpose of bidding, a fixed sum should be stated, as the lowest value of the wharf interest, to go with the franchises.
After much consideration I reached the conclusion that the method to secure the best results for the city, was adopted by the commissioners.
The plaintiff, present at the sale in his own interest, and with the design of securing the ferry franchises and wharf rights to himself, supposed that, by bidding a higher sum than $10,000 for the rights of the wharf, although a less percentage of the gross receipts than the successful bidder for the franchises, he might be entitled to the lease. But, although himself quite familiar with the amount of the receipts of these ferries from his own experience as a previous lessee of one of them, he seemed to have overlooked the controlling fact that the true value of these franchises was largely dependent upon the use of the adjacent wharf which was sold with it, and that the gross receipts of the ferries, and nothing else, was the true exponent of the value of the entire interests combined; and, therefore, it did not matter that, although the plaintiff might offer more than $10,000 per annum for the wharf, and more than any other person, he could not secure the lease unless he also offered a higher percentage than any other person bidding, of the gross receipts of the franchises, which represented the true value of the property.
In this view I do not regard the case, In the Matter of Merriam (84 N. Y., 596), and kindred cases, as adverse to the action of the commissioners of the sinking fund, in disposing of the property and interests in question.
In that case it was possible for the municipal corporation to have divided the subject, giving the rock excavation to one person, and the residue to another. Here there could have been no separation. One person could not secure the wharf and another person the franchises.
The testimony of the comptroller shows that the city authorities acted with deliberation in adjusting these terms, as the best under the circumstances. The burden rests upon the plaintiff to show that the result was wasteful of city property or injurious to the municipal interests, in that, I think, he has failed.
Although he claims to have protested against this method of disposition of the property, yet with knowledge of all these supposed defects and wastefulness he attended the auction and actually bid upon this property, and would *549 have taken the franchises could he have secured them at the sale.
Such conduct leads one to think that this present action is not so much to protect his interests as a taxpayer as to defeat the consummation of this sale, to the end that the property may be again exposed for sale in a way more in conformity with his own notions, through which he may hope to secure the franchises.
In itself there is nothing objectionable in the plaintiff’s desire to secure these franchises to be used in his own business, and for his own advantage, but if I am correct in what is stated before, that end cannot be reached through tins action.
The plaintiff’s counsel urges near the close of his brief that 4he defendant, the railroad company, has no power to contract to operate a ferry from New York city to Bay Bidge, and that for such reason the lease is illegal.
No such point is taken in the plaintiff’s complaint, and the counsel in urging it says, that “were this the sole difficulty with the lease the plaintiff would not make it a ground for a suit.”
I do not find that this objection, or any other ground urged by the plaintiff’s counsel, is sufficient to justify me in nullifying, or invalidating, the action of the commissioners of the sinking fund, and the plaintiff’s complaint must be dismissed, with costs.